UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Plaintiff, | : | 3:11-CR-183 (JCH) |
| | : | |
| v. | : | |
| | : | |
| WILNER CASTELIN, | : | JULY 10, 2013 |
| Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT'S MOTION FOR NEW TRIAL (Doc. No. 678)**

**I.     INTRODUCTION**

On May 13, 2013, a jury found defendant, Wilner Castelin, guilty of two counts of the Superseding Indictment. The jury returned a verdict of guilty with regard to Count One, in violation of 21 U.S.C. § 846; and Count Two, in violation of 18 U.S.C. §§ 1956(h) and 2. Castelin is incarcerated and awaits sentencing.

Before the court is Castelin's Motion for a New Trial (Doc. No. 678) ("Mot. for New Trial"), pursuant to Federal Rule of Criminal Procedure 33(a). For the reasons set forth below, the court denies the Motion.

**II.    FACTS**

On September 26, 2011, a federal grand jury returned a Superseding Indictment charging Castelin, along with others, with Conspiracy to Distribute and to Possess with Intent to Distribute Oxycodone, in violation of 18 U.S.C. § 846, and with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). See Superseding Indictment (Doc. No. 569).

On May 7, 2013, Castelin proceeded to trial before this court and a jury. See Doc. No. 656. On May 9, 2013, the court charged the jury. See Doc. No. 660, at 1.

1

During jury deliberations, the jury returned a note to the court that stated: "Did the defendant have to know that the substance was Oxycodone specifically rather than any or other controlled substance that comes in pill form?" See Jury Note #1, listed as Court Ex. 1 (Doc. No. 667). The Government's view was that Castelin merely had to know that the substance was a controlled substance, and the view of counsel for Castelin was that Castelin had to know that the substance was Oxycodone specifically. Trial Tr. at 511.

After a brief recess, the court provided the parties with three Second Circuit cases, including United States v. Andino, 627 F.3d 41 (2d Cir. 2010). The court discussed the cases and gave both parties an opportunity to speak. See Trial Tr. at 514–41. After discussion, the court indicated its intent to charge the jury, over the objection of the Government, that the Government had to prove that Castelin knew that the drug was Oxycodone. Id. at 541. The court also stated that it would refer the jury to the section of the court's initial jury charge on the word "knowingly," which included language regarding willful blindness. Id. The court so charged the jury. Id. at 542–43.[1] After receiving the supplemental instruction, the jury requested to review several pieces of evidence, including pills seized from the Government's Confidential Witness ("CW") and conversations between the CW and Castelin. Approximately fifteen minutes after returning to the jury room to deliberate, the jury sent another note stating its desire to end deliberations for the day and to return the following Monday. See Jury Note #4, listed as Court Ex. 4 (Doc. No. 667).

---

[1] The court instructed the jury as follows: "In order for the government to prove the second element of Count One, the government must prove that the defendant knew that the substance underlying the conspiracy charge was Oxycodone. In determining whether Mr. Castelin acted with this knowledge, the jury should refer to the instructions given to it by the court at [Section 30(B)(2)] about knowingly."

On Monday morning (May 13, 2013), the court informed counsel that it had reviewed the legal authority and determined that its supplemental instruction was incomplete. Trial Tr. at 554. The court stated its intent to deliver a modified supplemental instruction to the jury to inform them that the Government had to prove that the fact that the substance was Oxycodone was either actually known or reasonably foreseeable to the defendant. The court cited to Andino as the basis for this modified supplemental charge. Id.; see Andino, 627 F.3d at 47 n.3 (stating that, under Second Circuit precedent applicable to drug conspiracy cases, the Government must prove that drug type and quantity were reasonably foreseeable unless the defendant "directly and personally participate[d] in the underlying drug transactions"). Counsel for Castelin objected, stating that no modification was necessary and that recharging the jury would highlight that particular charge. Trial Tr. at 555. The court noted its responsibility to charge the jury correctly and told defense counsel that it would instruct the jury not to emphasize any particular charge. Id. at 555–56. Over defense counsel's objection, the court charged the jury that the Government had to prove that Castelin either knew, or that it was reasonably foreseeable to him, that the substance was Oxycodone. Id. at 558.[2] The court further instructed the jury not to give additional

---

[2] The court instructed the jury as follows:

You sent out a question on Thursday that took a long time to give you an answer. I need to modify my answer to you on that question. Your question, if you recall, was did the defendant have to know the substance was Oxycodone specifically rather than any other controlled substance that comes in pill form? The charge I give you now which is the charge that will control your deliberations which, in effect, replaces the answer I gave you on Thursday, is in order for the government to prove the second element of Count One, the government must prove that the defendant, Mr. Castelin, knew or it was reasonably foreseeable to Mr. Castelin that the substance underlying the conspiracy charge in Count One was Oxycodone.

In determining whether Mr. Castelin knew, as I just used that word, the jury should refer to the instructions given by the court at Section 30(b)(2) about "knowingly." As to the

3

weight to its modified supplemental instruction and referred the jury back to the remainder of the jury instructions.  Id. at 558–59.  After additional deliberation, the jury returned a guilty verdict on each of the two counts against Castelin.

## III.  STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provide that a "court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. Pro. 33(a).  The Rule confers broad discretion upon a trial court to "set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  See United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).  In exercising its discretion, however, the court must be careful not to wholly usurp the role of the jury; the court should defer to the jury's "resolution of the weight of the evidence and the credibility of the witnesses," unless "exceptional circumstances can be demonstrated." Id. at 1414 (internal quotation marks and citations omitted).  Ultimately, the court must decide "whether letting a guilty verdict stand would be a manifest injustice."  See United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).  The court should "examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  Id.  After doing so, "[t]here must be a real concern that an innocent person may have been convicted" in order to grant the motion.  Sanchez, 969 F.2d at 1414.  The court's Rule 33 authority should be used "sparingly" and only "in the most

---

       term reasonably foreseeable, that has its common language meaning in this context.

       Please understand by my calling you back, I don't mean to overemphasize this particular charge that I'm now giving you over anything else.  As I told you all, my instructions as a whole have to govern your deliberations[,] including this instruction which is in effect an answer to your first question.

Trial Tr. at 558–59.

extraordinary circumstances." Ferguson, 246 F.3d at 134 (internal quotation marks and citation omitted).

## IV. DISCUSSION

Castelin argues that the court should grant a new trial because the court's decision to amend its response to Jury Note #1 "irreparably prejudiced defendant."[3] Mot. for New Trial at 3. The Government argues that there is no evidence that Castelin is an innocent person who was wrongly convicted, the court acted correctly in modifying its supplemental instruction to the jury, and the court's supplemental instruction did not prejudice the jury. See Gov't's Opp. to Mot. for New Trial (Doc. No. 684) ("Gov't's Opp.") at 3–9. The court concludes that its decision to modify the supplemental jury charge did not prejudice Castelin by creating a "real concern that an innocent person may have been convicted." Sanchez, 969 F.2d at 1414.

When "a jury makes explicit its difficulties [through a written inquiry,] a trial judge should clear them away with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612–13 (1946). The Second Circuit, in particular, has "noted, and emphasized, the crucial importance of a completely accurate statement by the judge at that critical moment in a criminal trial when the jury interrupts its deliberations to seek further explanation of the law." United States v. Van Putten, 282 Fed. Appx. 950, 952 (2d Cir. 2008) (internal quotation marks and alterations omitted) (quoting United States v.

---

[3] Castelin does not appear to argue, as a basis for his Motion, that the court's modified supplemental jury instruction was incorrect as a matter of law. See, e.g., Mot. for New Trial at 3 ("[R]egardless of whether the Court's sua sponte effort to 'correct' its earlier response to the jury's question provided a more accurate description of the law . . ."). Rather, the basis for his Motion appears to be that the way in which the court gave the supplemental jury instruction drew attention to a particular element of the jury charge, which acted to prejudice Castelin. See id. at 5 ("While this Honorable Court's desire to make sure its response to the jury's note accurately reflect the law was admirable, the procedure utilized irreparably prejudiced defendant by spotlighting one element of a charge that made it easier to convict defendant." (emphasis added)). Accordingly, the court will not discuss in detail its reasons for correcting the supplemental charge, which it did at the time. See Trial Tr. at 554–57.

Lefkowitz, 284 F.2d 310, 314 (2d Cir. 1960)).  Moreover, "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given."  United States v. Civelli, 883 F.2d 191, 195 (2d Cir.), cert. denied, 493 U.S. 996 (1989).

The Second Circuit's decision in United States v. James, 998 F.2d 74 (2d Cir. 1993), is instructive.  There, the defendant was on trial for, among other things, aiding and abetting a bank robbery by serving as the getaway driver.  Id. at 76–77.  After the close of evidence, the court instructed the jury on the law, including the law of aiding and abetting.  Id. at 77.  During jury deliberation, the jury sent the court a note "inquiring whether [the defendant] would have had the requisite knowledge under the law of aiding and abetting if he had only become aware of the robbery after the incident in the bank but then in the car decided to participate."  Id.  The court instructed the jury that the defendant could not be guilty as an aider and abettor if he only knew of the robbery after the incident in the bank.  Id.  Later that day, the government provided the court with legal authority showing that the supplemental charge was legally incorrect.  Over the objections of defense counsel, who argued that a reversal of the supplemental instruction "would be extremely prejudicial and would highlight the issue unfairly," the court reversed his previous supplemental instruction.  Id.  Specifically, the court informed the jury that subsequent research revealed that his prior instruction was incorrect, and that the defendant would be guilty even if he participated in the robbery after the incident in the bank.  The jury convicted the defendant less than three hours later.  Id.

On appeal, the Second Circuit held that the district court did not err "in giving a modified supplemental instruction to rectify the legally incorrect supplemental charge he had previously given." Id. at 78.  The James Court noted that both the supplemental instruction and the later modification were given "in response to an inquiry by the jury." Id.  Further, once the court determined that its supplemental instruction was incorrect, it "properly gave a modified supplemental instruction correcting [its] prior erroneous statement." Id. (citing United States v. Horton, 921 F.2d 540, 546 (4th Cir. 1990)).

Similarly, here, the jury made a written inquiry about an issue of law.  As in James, the court responded to the jury's inquiry with a supplemental instruction.  Then, after further examining legal authority and determining that its instruction was incomplete, the court modified its supplemental instruction to modify its prior statement, notwithstanding defense counsel's argument that such a modification was highly prejudicial.  Id.

To support his argument that the modification was prejudicial, Castelin cites United States v. Velez, 652 F.2d 258 (2d Cir. 1981).  There, the district court had instructed the jury on several counts, including conspiracy to import and to possess with intent to distribute cocaine.  Id. at 260.  Upon a request by the jury for supplemental instructions clarifying the counts against the defendant, the court restated the essential elements of each offense.  Id. at 261.  However, the supplemental instruction for the conspiracy count failed to state that willful membership in the conspiracy is an essential element of the offense.  Defense counsel objected to the omission, but the court refused to alter the charge.  Id.  The defendant was subsequently convicted of conspiracy and acquitted on all other counts.  Id.

7

On appeal, the Second Circuit reversed the conviction, holding that the district court's failure to state that willful membership in the conspiracy is an essential element of conspiracy was "both erroneous and highly prejudicial." Id. at 262.  The Second Circuit reasoned that this omission uniquely prejudiced the defendant, whose theory at trial was that she was not a knowing participant in the scheme.  Moreover, the jury's note revealed its difficulty in comprehending the elements of conspiracy, and the district court's failure to restate all the elements of the offense "could well have given the impression that willful membership was not an essential element [of conspiracy]." Id.

The Velez decision is distinguishable.  First, unlike here, the district court's supplemental instruction was erroneous.  The Velez Court noted that an erroneous supplemental charge "will not ordinarily require reversal where there is no evidence that the defendant was prejudiced by it, or where a subsequent supplemental instruction cures the defect." Id. (emphasis added) (internal citations omitted).  Here, the court's subsequent supplemental instruction not only was correct, but it also cured a deficiency in the supplemental instruction.  Second, the scope of the jury's note was different.  In Velez, the jury requested clarification of the counts in the indictment.  The Velez Court noted that, in other Circuits, "if a jury requests clarification of the counts alleged in the indictment, a court's failure to charge on the requisite mens rea constituted reversible error." Id.  Here, however, the jury's question pertained to a specific aspect of the conspiracy count, namely, whether Castelin had to know that the substance was Oxycodone specifically or whether it was sufficient to know that it was a controlled

8

substance in pill form.  Accordingly, the court properly restricted its supplemental instruction and modified its supplemental instruction to the question posed.[4]

Because the court's modified supplemental instruction cured a deficiency in its supplemental instruction and accurately stated the law, and because Castelin has not shown prejudice that would create a concern that an innocent person was convicted, the court concludes that "competent, satisfactory and sufficient evidence in the record supports the jury verdict."  Ferguson, 246 F.3d at 134 (internal quotation marks omitted).  Taking the record as a whole, letting Castelin's guilty verdict stand would not be a "manifest injustice."  Id.

## V.   CONCLUSION

For the foregoing reasons, defendant's Motion for a New Trial (Doc. No. 678) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of July, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[4] Castelin also argues that the court should have "included reasonable foreseeability language in the [original] Jury Charge regarding defendant's knowledge of oxycodone," which would have permitted the court to refer back to the original charge when responding to the jury's note.  Mot. for New Trial at 4.  However, Castelin did not even request that the court charge on the definition of "knowingly," much less request that the court include "reasonable foreseeability" in the definition of "knowingly."  See generally Defendant's Request to Charge (Doc. No. 627) (not requesting charge on "knowingly").